Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued April 22, 2003        Decided July 25, 2003

No. 02-7032

3883 CONNECTICUT LLC,
APPELLANT

v.

DISTRICT OF COLUMBIA, *ET AL.*,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02453)

————

*Roger J. Marzulla* argued the cause for the appellant. *Nancie G. Marzulla* was on the brief.

*Donna M. Murasky*, Assistant Corporation Counsel, District of Columbia, argued the cause for the appellee. *Charles L. Reischel*, Deputy Corporation Counsel, District of Columbia, was on the brief.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: 3883 Connecticut LLC, a limited liability corporation wholly owned by Clark Tilden LLC and CEI, Inc. (Clark), brought suit against the District of Columbia (District) claiming that the District's issuance of a stop work order (SWO) that halted Clark's construction of a 168–unit apartment building violated its procedural due process and equal protection rights. The district court dismissed the suit, holding that Clark lacked a constitutionally protected property interest in the building permits the District had issued and that its equal protection claim was unripe. *3883 Conn. LLC v. District of Columbia*, 191 F. Supp. 2d 90, 95 (D.D.C. 2002) (mem.). We affirm the district court but on different grounds, concluding that, although Clark had a property interest in the permits, the process afforded Clark was adequate; on Clark's equal protection claim, we affirm the grant of summary judgment to the District because the claim fails as a matter of law on two of its elements.

## I.

### A.

The District of Columbia Construction Codes, D.C. MUN. REGS. tit. 12A, §§ 101.0 *et seq.* (Construction Codes), authorize the issuance of preliminary permits to a builder to begin limited activities on a building site while approval of construction plans for the complete project pends before the District Building and Land Regulation Administration (BLRA). *Id.* § 108.1–.2. Pursuant to these provisions, Clark sought and obtained five separate permits to begin the sheeting, shoring, excavation, foundation construction and underpinning of existing structures in preparation for its construction of the nine-story apartment building at 3883 Connecticut Avenue, Northwest. In order to obtain the five preliminary permits, Clark submitted *inter alia* an Environmental Impact Screening

Form (EISF), describing the nature of the site and the proposed project, to District authorities—in particular, to the District Department of Health, Environmental Administration (DOH)—which determines whether a comprehensive, detailed Environmental Impact Statement (EIS) is required by the Environmental Protection Act (DCEPA), D.C. Code §§ 8–109.01 *et seq.*, before a building project can proceed. D.C. Mun. Regs. tit. 20, § 7204.1–.4. Based on Clark's EISF, DOH determined that an EIS was not required.[1] With its five preliminary permits in hand (although full project approval was still pending), on July 31, 2000,[2] Clark began work at the 3883 Connecticut Avenue site. The next day, opponents of the project calling themselves Friends of Tilden Park filed suit in Superior Court seeking to enjoin construction. They alleged that the EISF Clark had submitted contained material errors and omissions. The court found that there were discrepancies in Clark's initial EISF and issued a temporary restraining order (TRO). The TRO lasted only two days and immediately upon its dissolution on August 3, BLRA issued a SWO halting work on the project "until compliance with all applicable District of Columbia law and regulations . . . can be confirmed." Notice of Stop Work Order, Aug. 3, 2000, JA 44–46.

On August 9, Clark appealed the SWO to the BLRA Administrator, arguing, among other things, that it was invalid under District law and should be rescinded because the errors on the EISF were immaterial. Two days later, the Administrator responded, denying Clark's appeal and upholding the SWO because he questioned whether the preliminary permits were based on inaccurate site information contained in Clark's EISF. Clark submitted a revised EISF on August 16, disclosing for the first time that mature trees were located

---

[1] Clark in fact obtained the five permits before DOH made its determination. Once it obtained them, Clark was allowed to begin the preliminary work while the EIS determination was pending, although Clark did no work at the site until DOH decided no EIS was necessary.

[2] All events occurred in 2000 unless otherwise noted.

on the property, a stream ran near the property and an adjacent building was listed on the National Register of Historic Places. Clark then appealed the BLRA Administrator's decision to the Director of the Department of Consumer and Regulatory Affairs (DCRA), BLRA's supervising agency. Although the Director did not act on Clark's appeal, on September 7, DCRA did order Clark to submit more detailed environmental information regarding several potential impacts of its proposed project—including on traffic, vegetation and trees, storm water, soil erosion and groundwater control so that it could reconsider whether an EIS was required Clark submitted the requested information and, on October 3, renewed its request that the Director review the SWO. Again the Director failed to respond. On October 13, Clark filed the instant suit, initially seeking injunctive relief only. Meanwhile DCRA requested DOH and other District agencies to review Clark's revised EISF. DOH officials reviewed Clark's revised EISF and the supplemental materials Clark had submitted and visited the 3883 Connecticut Avenue site. DOH was concerned with surface water problems and recommended to DCRA that it require Clark to prepare a mitigation plan. Clark met with DOH and developed a plan that resolved the issue; on November 22, BLRA rescinded the SWO and, four days later, issued a building permit for Clark's entire project. Clark then amended its complaint to seek compensatory and punitive damages for the four-month interruption of its project.

## B.

The District moved for summary judgment and the district court dismissed both of Clark's claims. It dismissed Clark's due process claim because, it concluded, Clark lacked a property interest in the five preliminary permits suspended by the District's SWO. *3883 Conn.*, 191 F. Supp. 2d at 93–95. The court read our statement in *Tri-County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 458 (D.C. Cir. 1997), rejecting the notion " 'that an agency deprives an applicant of property whenever it backtracks on a prior favorable finding on one of [the approvals preliminary to issuance of a building

permit] independently of withdrawal of the permit itself,' " to mean that the District's approval of the five preliminary permits issued to Clark did not confer any property rights on Clark. *3883 Conn.*, 191 F. Supp. 2d at 93 (quoting *Tri-County*, 104 F.3d at 458) (internal quotations omitted). According to the district court, Clark's only property interest lay in "the real building permit," i.e., the one ultimately granted on November 27. *3883 Conn.*, 191 F. Supp. 2d at 93. Permits for preliminary work, the court said, were merely " 'steps toward the issuance of a building permit' "and therefore, under *Tri-County*, not property. *Id.* at 93.

As other courts have done, the district court applied the property interest test set forth in *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972), to land-use regulation, concluding that Clark lacked " 'a legitimate claim of entitlement,' " *3883 Conn.*, 191 F. Supp. 2d at 93–94 (quoting *Roth*, 408 U.S. at 577), and therefore had no property interest in the preliminary permits because " 'significant discretion [is] conferred upon the local agency' " under District law. *3883 Conn.*, 191 F. Supp. 2d at 94 (quoting *Gardner v. City of Baltimore*, 969 F.2d 63, 68 (4th Cir. 1992)). The court characterized the permits at issue as "partial permits" under the Construction Codes, in particular, D.C. MUN. REGS. tit. 12A, § 108.2, which provides:

> the code official *is authorized to* issue a partial permit for the construction of foundations or any other part of a building or structure before the entire plans and specifications for the whole building or structure have been submitted, provided adequate information and detailed statements have been filed complying with all pertinent requirements of the Construction Codes.

*3883 Conn.*, 191 F. Supp. 2d at 94 (quoting D.C. MUN. REGS. tit. 12A, § 108.2) (emphasis added). Because "[t]he language of this section is discretionary," the court said, it created no property interest in the permits. *3883 Conn.*, 191 F. Supp. 2d at 94.

The district court also dismissed Clark's equal protection claim, explaining that Clark's assertion that its rights were violated because "the District applied the requirements of the DCEPA to this project alone" boiled down to a complaint that the District had required Clark to prepare an EIS. *3883 Conn.*, F. Supp. 2d at 95. But because the District had not in fact required Clark to submit an EIS, it concluded, Clark's claim was premature. *Id.* Clark then filed this appeal.

## II.

We review the district court's grant of summary judgment *de novo. Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 35 (D.C. Cir. 1997). Summary judgment is appropriate if " 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 650 (D.C. Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Morgan*, 328 F.3d at 650 (internal quotations omitted), and a moving party is " 'entitled to a judgment as a matter of law' " if the nonmoving party " 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## A.

We determine whether the interest at issue here constitutes property protected by the Fifth Amendment under *Roth*, 408 U.S. at 577, which declared that "[p]roperty interests . . . are not created by the Constitution[,] [but] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *See also Gardner*, 969 F.2d at 68; *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 205–08 (D.C. Cir. 2003) (considering, but finding it unnecessary to decide whether to adopt *Roth* approach); *Bituminous Materials v.*

*Rice County*, 126 F.3d 1068, 1070 (8th Cir. 1997); *RRI Realty Corp. v. Village of Southampton*, 870 F.2d 911, 917 (2d Cir.), *cert. denied*, 493 U.S. 893 (1989); *cf. George Wash. Univ.*, 318 F.3d at 212–13 (Henderson, J., concurring). In adopting the analytical approach of *Gardner* and similar cases, however, the district court overlooked a critical distinction between those cases and this one—namely, in those cases the question was whether an *applicant* for a permit had a property interest therein whereas, here, we must decide whether the *holder* of a permit has a property interest therein. *Gardner* and *George Washington University* focus on an official's discretion to approve an application in determining whether the applicant has "more than a unilateral expectation" in the permit it seeks while we must determine whether the permit holder has "more than a unilateral expectation" in the permit's *continued effect.* Therefore our inquiry focuses on the official's discretion to revoke or suspend the permit. *Lopez v. FAA*, 318 F.3d 242, 249 (D.C. Cir. 2003). In *Lopez*, the court considered whether the plaintiff had a property interest in his continued designation by the Federal Aviation Administration (FAA) as a "Designated Engineering Representative" (DER). *Id.* at 245. To answer the question, the court did not examine the FAA's discretion to make the designation in the first place, but rather its discretion to revoke it. Because the FAA had the authority to "rescind [this] delegation . . . at any time for any reason" under the applicable regulation, we held that the plaintiff had no constitutionally protected property interest in his status as a DER. *Id.* at 249; *see Barry v. Barchi*, 443 U.S. 55, 64 n.11 (1979) (plaintiff had property interest in horse trainer's license because under state law license could "not be revoked or suspended at the discretion of the racing authorities"); *see also Fried v. Hinson*, 78 F.3d 688, 692 (D.C. Cir. 1996) (no property interest in continued designation as pilot examiner where status could be freely rescinded); *Doran v. Houle*, 721 F.2d 1182, 1184–86 (9th Cir. 1983) (no property interest in permit issued to veterinarian to conduct brucellosis tests on cattle "held at the sufferance and will of the officials charged with administering the permit program"), *cert. denied*, 466 U.S. 950 (1984).

Sections 108.9 and 117.1 of the Construction Codes, respectively, define District authorities' discretion to revoke and suspend permits through a stop work order.[3] D.C. MUN. REGS. tit. 12A, §§ 108.9, 117.1. An examination of these two sections reveals that discretion to terminate or suspend work already allowed by the permits is substantially limited. Under section 108.9, a "code official is authorized to revoke a permit or approval issued under the Construction Codes, for any of the following [5] conditions:" (1) "a false statement or misrepresentation of fact in the application . . . that substantively affected the approval"; (2) the proposed construction does not comply with the Construction Codes, the permit, or the approved plans; (3) issuance of a citation for violation(s) of the Construction Codes threatening health and safety; (4) at least two SWOs have been "posted" and not complied with; and (5) the contractor's license has terminated. D.C. MUN. REGS. tit. 12A, § 108.9. Section 117.1 authorizes the issuance of a SWO suspending a permit if "work on any building or structure is being performed contrary to the provisions of the Construction Codes or in an unsafe and dangerous manner." *Id.* § 117.1.

We believe both of these provisions indicate that Clark has a property interest in the continued effect of the five permits. Revocation is limited to the five circumstances listed and

---

[3] In their briefs the parties follow the district court's analysis and thus focus only on the provisions that authorize the issuance of building permits under the Construction Codes. Clark argues that the permits were issued under section 108.1, which governs "permits," and, according to Clark, limits the issuing official's discretion sufficiently to create a property interest. The District contends the permits were issued under section 108.2, which governs "partial permits," and, the District says, vests sufficient discretion in the official to create no property interest. The district court determined that Clark's permits were "partial permits" issued pursuant to section 108.2. *3883 Conn.*, 191 F. Supp. 2d at 94. We need not decide which provision applies, however, because the revocation and suspension provisions of the Construction Codes do not distinguish between "permits" under section 108.1 and "partial permits" under section 108.2. D.C. MUN. REGS. tit. 12A, §§ 108.9, 117.1.

issuance of a SWO depends on whether work is performed contrary to the provisions of the Construction Codes or unsafely. *Id.* §§ 108.9, 117.1. Discretion is not unfettered as in *Lopez*, where the FAA could "rescind [this] delegation [as a DER] . . . at any time for any reason," *Lopez*, 318 F.3d at 249, but instead is constrained sufficiently to give Clark an expectation in the continued effect of the permits—and therefore a property interest in them. *Cf. George Wash. Univ.*, 318 F.3d at 208–09 (property interest where official's discretion to issue "special exception" was based on finding that use was "not likely to become objectionable to neighboring property.").

*Tri-County*, on which the district court relied, does not compel a different conclusion. Our holding there that a permit applicant had no property interest in the District's waiver of the EIS requirement because the waiver was "a mere step toward issuance of a building permit" does not fit the permits issued here. *3883 Conn.*, 191 F. Supp. 2d at 93 (quoting *Tri-County*, 104 F.3d at 458). The *Tri-County* waiver, unlike the permits, did not affirmatively authorize the holder to do anything. *Tri-County*, 104 F.3d at 458 ("The waiver was simply an administrative finding that no more was required by way of satisfying [the environmental review] requirement for issuance of the building permit."). The five preliminary permits are, on their own, authorizations to act—authorizations with which the District could not interfere without affording Clark adequate process.

## B.

Our finding of a property interest, however, does not alter the disposition of Clark's due process claim because the procedures available to Clark to challenge the SWO afforded it due process. Under the Construction Codes, Clark was entitled to challenge the SWO pursuant to an expeditious appeal process with three levels of review. D.C. MUN. REGS. tit. 12A, § 122.1.2. Specifically, Clark was entitled to first seek review of the SWO by a District "reviewing official," here, the BLRA Administrator, who was required to, and did,

render a decision within three working days. *Id.* If dissatisfied, Clark could, and did, seek a second review from the Director of the DCRA, who also must render a decision within three working days. *Id.* Finally, if the Director denied the request or failed to act timely, Clark could appeal to the District Board of Appeals and Review (BAR). *Id.*[4]

We decide whether these provisions adequately protected Clark's interest in the permits under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires the court to consider:

> first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 335. Clark maintains that under *Mathews* the procedure to challenge a SWO is constitutionally infirm because it does not guarantee a hearing before the SWO can issue. Clark urges that it has a substantial interest in the continued effect of its permits—it incurred construction delay costs caused by the SWO—and therefore the risk of deprivation must be minimized. Therefore, according to Clark, due process mandates an adversarial hearing to test the validity of a SWO before it issues.

We agree with Clark that the permit holder has a substantial interest in the continued effect of the permit and in proceeding with a project without delay. *See Tri-County*, 104 F.3d at 462.[5] At the same time, we recognize the District's

---

[4]  Clark sought review at the first two levels. Although the Director twice failed to render a decision, Clark did not seek BAR review.

[5]  *Tri-County*, in addition to discussing whether the plaintiff had a property interest in the waiver of an EIS requirement, considered whether a district official's "oral order of suspension" of a building

significant interest in maintaining its capability to act swiftly to bring an immediate halt to construction work that poses a threat to public health and safety or to the environment. *See* D.C. Mun. Regs. tit. 12A, § 117.1. Moreover, the regulations provide for expedited post-deprivation review before two District officials and then immediate appeal to the District Board of Appeals and Review—a procedure that reduces the risk of protracted harm from a wrongly-issued order. D.C. Mun. Regs. tit. 12A, § 122.1.2. We therefore conclude that these protections meet the requirements of due process. *Cokinos v. District of Columbia*, 728 F.2d 502, 503 (D.C. Cir. 1983) (car towing without pre-deprivation hearing valid in light of prompt post-deprivation hearing); *cf. Dixon v. Love*, 431 U.S. 105 (1977) (driver's license may be summarily suspended before hearing where record showed driver had extraordinarily poor driving record).

## C.

Finally, we consider Clark's assertion that the district court erred in dismissing its equal protection claim. Clark maintains the district court mistakenly characterized its claim to be that it was required to submit an EIS when, in fact, Clark's claim is that the District based the SWO on the expectation that an EIS would be necessary.

Even if the district court mistook the thrust of Clark's claim and therefore concluded Clark's claim was unripe because no EIS had been required, we agree with the district

permit violated procedural due process. *Tri-County*, 104 F.3d at 460. In that case, the acting DCRA Director announced during a public meeting the summary suspension of a building permit based on another official's inaccurate representation. *Id.* at 457. We analogized that action to the issuance of a SWO because the two have similar effects, and held that the "oral order of suspension" violated due process because it was not based on "formal evidence," *id.*, and the only review was by the Board of Appeals and Review— a single-step appeal process that did not guarantee prompt resolution. *Id.* at 460–62.

court's decision. Summary judgment against Clark was appropriate because Clark failed to make a sufficient showing regarding two essential elements of its "class of one" equal protection claim: (1) disparate treatment of similarly situated parties (2) on no rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *see Morgan*, 328 F.3d at 650. Clark showed only that the District had never before required an EIS for an apartment building project. Second Declaration of Francis J. Coen, Oct. 30, 2000 at ¶ 5, JA 120. That showing said nothing about what requirements the District had imposed upon other projects before ultimately determining no EIS was required, which was Clark's situation. Nor does that showing suggest that the District targeted Clark without a legitimate reason. Clark's claim all along has been that the District subjected the project to a more probing analysis than others because of local opposition; but there is nothing unusual or untoward in local government officials' responsiveness to public opinion. *Cf. Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000) ("[I]n a democratic republic, responding to the voice of the public is expected and is not, standing alone, a malevolent motive for selective enforcement purposes.") (mayor's leadership in opposition to plaintiff's construction of apartment complex in response to community opposition not improper). Therefore, Clark's equal protection claim was properly dismissed.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*