**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0596n.06

**Nos. 10-2548, 10-2612**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 08, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| GEORGE T. PAETH; MARGARET C. PAETH, )<br>)<br>Plaintiffs-Appellees Cross-Appellants, )<br>)<br>v. )<br>)<br>WORTH TOWNSHIP, a Michigan municipal )<br>corporation, )<br>)<br>Defendant-Appellant Cross-Appellee, )<br>)<br>BARBARA CUTCHER, Building and Zoning Official )<br>for Worth Township, in her official capacity, )<br>)<br>Defendant. )<br>) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: GUY, COLE, and ROGERS, Circuit Judges.

PER CURIAM. George and Margaret Paeth faced many hurdles from Worth Township in trying to renovate their home. Eventually, they took the Township to court, where a jury awarded them $600,000 on First Amendment retaliation and procedural due process claims. The Paeths did not establish a procedural due process violation, because the process they were afforded was constitutionally sufficient. There was, however, sufficient evidence to support their First Amendment retaliation claim, and the damages awarded on the First Amendment claim were not excessive. Finally, the district court's partially reduced grant of attorneys fees was not an abuse of discretion.

1

I.

In 1998, George and Margaret Paeth purchased a house in Worth Township. Though they had originally planned to renovate and resell it, they instead decided to prepare it for their own habitation. Their renovation plans included adding enclosed areas to the first floor and replacing the roof. The plans meant that the house's footprint would expand slightly on the northeast and northwest corners. The northwest corner already did not conform with a five-foot setback requirement in place for the site.

The Paeths applied for a land use permit, which necessitated a survey of the property that revealed the nonconforming northwest corner. The Paeths claim that they notified Barbara Cutcher, Worth Township's zoning administrator, who said that the nonconformity would not be a problem and that they could continue their development plans. The Paeths obtained a land use permit from the Township on April 27, 1999, and then a building permit from the county's building department on June 17, 1999. The county's building department inspected and approved the house's foundation, and the house was then framed.

In 2002, the Township formed its own building department, which assumed the responsibilities that had previously rested on the county. Cutcher became the Township's zoning and building administrator. Soon after, she declared that the county inspector had informed her that the Paeths' building permit had expired in 2002. The Paeths disagreed, but obtained a new building permit from the Township on July 7, 2003.

In June 2004, Cutcher notified the Paeths that their house did not comply with the Township's setback ordinance, which by then was eight feet, not five, and told them to contact zoning administrator Lynn Laughlin as "[t]his is a serious problem." Cutcher's letter also extended the Paeths' permit into July 2004. Cutcher later testified that former Township supervisor Janice Putz had instructed her to write the letter, though Cutcher agreed that the contents were accurate and the letter should have been sent.

On June 22, 2004, the Paeths submitted a variance application, prompting Laughlin to request another property survey. The new survey showed that the 1999 survey significantly underestimated the distance between the house and property line; the Township claims that this meant Cutcher relied on inaccurate information when she approved the land use permit. After some additional filings by the Paeths explaining their reliance on representations made by Township officials, the Zoning Board of Appeals (ZBA) held a hearing on the variance request on May 18, 2005. The ZBA voted unanimously to deny the variance, meaning that the Paeths would have to bring their house back into compliance by removing the problematic portions.

The Paeths appealed the ZBA's decision to the county's circuit court, which found that the ZBA had applied the wrong standard to the request and so remanded for further proceedings. The ZBA upheld its denial of the request on May 24, 2006; the Paeths never received notice of the hearing, which was required by law. It appears that the letter sent notifying them had the wrong address. The Paeths again appealed, this time to the state circuit court, and they obtained a third heading. The ZBA again denied the variance request on November 13, 2006, at which point the

Paeths again appealed to the circuit court. This time, the circuit court reversed the decision of the ZBA and granted the variance. The Township unsuccessfully appealed to the Michigan Court of Appeals, which dismissed the claim for lack of jurisdiction on July 13, 2007.

On November 5, 2007, Cutcher posted a stop work order on the Paeths' property. She insisted that the Paeths needed to obtain a new permit to continue work, and provided an application for one. The Paeths received no notice of a hearing before the order was posted, a requirement under Mich. Comp. Laws § 125.1512(3): "If construction is being undertaken contrary to a building permit, . . . the enforcing agency shall give written notice to the holder of the building permit . . . notifying him of the violation of this act . . . and to appear and show cause why the construction should not be stopped." Cutcher testified that she posted the order on instruction from Marcy Bartnicziak, the Township Clerk, and against her better judgment. A number of Township officials corroborated Cutcher's account that she did not want to post the order, but also testified that they did nothing to stop her from doing so.

Cutcher testified that had the Paeths requested a new permit, the matter could have been resolved in a day or two. Instead, the Paeths contacted the State of Michigan Office of Local Government and Consumer Services to confirm that their 2003 permit was still valid. After some confusion, the office issued a letter on May 22, 2008, stating that the Paeths could begin working "upon meeting the conditions set forth within the letter for code compliance." Cutcher wrote to the Paeths on May 24, 2008, confirming the Paeths had a valid permit, but also demanding that they contact her before beginning work so that she could inspect the property for code compliance. The

Paeths did not contact her. The stop work order was not removed from the property until October, pursuant to a district court order.

On September 11, 2008, the Paeths sued Cutcher and Worth Township on four counts, all brought under 42 U.S.C. § 1983: (1) violation of their First Amendment rights when Cutcher and the Township retaliated against them for appealing the ZBA's variance decision; (2) violation of the Equal Protection Clause; (3) violation of substantive and procedural due process because of the issuance of the stop work order without notice or an opportunity to respond; and (4) a request for mandamus and superintending control. Count Four was rendered moot, and both sides moved for summary judgment.

The district court found in favor of the Township on Count 2 and the substantive due process prong of Count 3, and the Paeths have not appealed those decisions. On Count 1, the district court found that there was enough conflicting evidence regarding the Township's motives to send the issue to trial. The district court found that the Paeths had established a procedural due process violation as a matter of law and so granted summary judgment in their favor on the second prong of Count 3. It found that the Paeths had a property interest in continuing construction on their home. The district court rejected the Township's argument that the building permit conferring that interest had been invalidated by the Paeths' suspending work under 2003 Mich. Residential Code R105.5, because that suspension was caused by the case's litigation, and so the permit remained valid. The district court concluded that the ZBA's stop work order deprived the Paeths of that right without prior notice contrary to state law.

The district court also found that Cutcher was not entitled to qualified immunity, and that the Township was eligible for municipal liability. The district court found that the ZBA is a final decision-making body, and so its decision to deny the Paeths a variance constituted the official policy of the Township, thus making it liable. As for Cutcher's posting of the stop work order, the district court found that though Cutcher was not the final authority, evidence that higher-up board officials approved was enough for a fact finder to conclude "that the action represented the official position of the township."

The trial on Count 1 lasted five days. At the conclusion of trial, the Township moved for judgment as a matter of law, arguing that the Paeths had not presented sufficient evidence to prove the second and third elements of a First Amendment claim, namely, the presence of an adverse action and a causal link to protected conduct. The district court denied the motion, and the jury found for the Paeths. The jury awarded the Paeths $600,000 in damages—$275,000 on their First Amendment retaliation claim and $325,000 on their procedural due process claim. Worth Township moved for a new trial, or in the alternative remittitur, which the district court denied. The district court held that the damages were not excessive, the trial was not unfair, and the verdict was not against the weight of the evidence.

The district court granted in part the Paeths' motion for attorneys fees. The Paeths had requested $342,294.00, and were granted $201,097.79. The decrease resulted from three factors. First, the district court decreased the hourly rates for each of the three attorneys on the case. Second, the district court decreased the number of hours billed. Finally, the district court refused to include

the hours billed by a law student filling the role of a clerk or paralegal. To the original lodestar amount calculated as $191,521.70, the district court added 5%, or $9,576.09, because counsel had been compelled to shoulder the expenses for the span of the litigation, as the Paeths had been unable to pay their fees.

The Township timely appealed on a number of grounds detailed below, and the Paeths cross appealed the grant of attorneys fees.

II.

A. Grant of summary judgment on procedural due process violation

We need not determine whether the Paeths had a property interest in continuing construction on their home, because even if they did, they received sufficient process when the stop work order was issued.[1] What process is due under the Constitution is not equivalent to the procedures outlined by statutes or ordinances, and so a violation of them does not automatically point to a due-process violation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541-42 (1985), *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999); *see also Chandler v. Village of Chagrin Falls*, 296 F. App'x 463, 470-72 (6th Cir. 2008). Rather, there is a federal constitutional framework that needs to be followed in determining whether there is a federal procedural due process violation. Assuming

---

[1] Our reasoning for reversing the judgment of the district court was not presented in the same terms to the court below, although it appears in Worth Township's brief on appeal. This issue is still properly before the court, however, because Worth Township did challenge the Paeths' procedural due process claim below, albeit with some different reasoning. Changing the framing of the argument does not change its crux: that the Paeths did not satisfy the elements of a procedural due process claim. *See Chandler v. Village of Chagrin Falls*, 296 F. App'x 463, 467-68 (6th Cir. 2008).

that there is a property interest protected by state law, there are three factors to be weighed, as set

forth definitively by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Under these factors, the Paeths' constitutional rights were not violated by the posting of the stop

work order without notice. Even assuming the Paeths had a valid permit and an attendant property

interest in continuing construction on their home, that interest was not an extremely weighty one.

At most, the Paeths were engaging in part-time construction at the time the stop work order was

issued. The order came with instructions for how to apply for a new permit, a process that could

have taken less than a day and that involved affording the Paeths an opportunity to be heard. Had

the Paeths performed these steps, they would have been briefly inconvenienced by the stop work

order, but the issue would have been resolved quickly. In fact, the Paeths encountered a similar

situation back in 2003, when they did apply for and receive a new permit. The idea that their choice

to ignore the proffered procedure this time can create a federal cause of action resulting in $325,000

in damages makes little sense. See *Herwins v. City of Revere*, 163 F.3d 15, 20 (1st Cir. 1998), where

the First Circuit reversed a grant of summary judgment on similar grounds.

In addition, the Township's interest in prompt posting of the order was not insignificant. No

work had been done on the property for several years, and no inspections had taken place. Whether

or not this inactivity invalidated the building permit, it does raise the probability that the conditions of the house had changed in such a way that it could have rendered further work dangerous to those involved or to the surrounding environment. There was also evidence that the house was not compliant with various provisions of the building code, evidence that came to light only after the original permit was issued. The Township therefore had an interest in preventing *any* further work from taking place until such concerns could be addressed, and the fact that the stop work order may have also been posted with a retaliatory motive does not negate these concerns. Temporary inconvenience does not hold up against such concerns, and so the Paeths received sufficient process such that no constitutional deprivation occurred.

In *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068 (D.C. Cir. 2003), the D.C. Circuit confronted a situation remarkably similar to the one in this case. There, a local building administration issued a stop work order without notice. The court found that though there was a property interest in the building permits at issue, there was no due process violation "because the procedures available to [the plaintiff] to challenge the SWO afforded it due process." *Id.* at 1073. These procedures consisted of the right to "an expeditious appeal process with three levels of review." *Id.* The court analyzed the procedures under *Eldridge* and concluded that despite the fact that a permit holder "has a substantial interest in the continued effect of the permit and in proceeding with a project without delay," this interest must be balanced against the municipality's "significant interest in maintaining its capability to act swiftly to bring an immediate halt to construction work

that poses a threat to public health and safety or to the environment." *Id.* at 1074. Under these circumstances, the court held, a speedy post-deprivation review satisfied due process requirements.

A balancing of the *Mathews v. Eldridge* factors leads inescapably to the conclusion that there was no procedural due process violation in this case. For this reason, the damages awarded by the jury, after being instructed that there was a due process violation, must be vacated.

B. First Amendment retaliation claim

1. Sufficiency of evidence

There was however sufficient evidence for the jury to conclude that the Paeths had satisfied the elements of their First Amendment retaliation claim. The district court was therefore correct to deny the Township's motion for judgment as a matter of law. Of the three-part showing necessary for a retaliation claim, the Township disputes the second and third elements—adverse action and a causal connection between the action and protected conduct—with regard to two actions by the Township: the issuance of the stop work order, and the failure to provide notice regarding the variance hearing. The Township's argument on these points is unconvincing.

Both the Township's issuance of the stop work order and its failure to provide notice on the variance hearing were adverse actions that satisfied the second element of a retaliation showing. Such actions would "deter a person of ordinary firmness from continuing to engage in [protected] conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The order was the latest action in a line of continuing interference with the Paeths' construction plans. It was publicly humiliating and rendered continuing work illegal, as George Paeth, well versed in the building laws, would

know. The fact that the ZBA hearing was held with no notice was an adverse action precisely because notice was required under law. From the Paeths' perspective, whenever they tried to make use of legal means to have their claims adjudicated, the Township responded by moving outside the law. Lack of notice could dissuade them from continuing to seek adjudication, because they were being denied access to that adjudication. The level of deterrence necessary for a First Amendment claim shifts according to the circumstances of the case. *See Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). Here, there is enough that the jury could find it satisfied.

The Paeths also offered enough evidence to support the inference of a causal connection between these adverse actions and the Paeths' protected act of appealing the ZBA's decisions to the circuit court. With regard to the issuance of the stop work order, this evidence included testimony from Cutcher that she was instructed to issue the order because the Township was not going to appeal the Michigan court's decision against it and that she did not think the action was right, and an excerpt from Cutcher's notebook with similar content. There was also testimony from ZBA member Thomas Gilbert that Bartniczak had a history of using her position to make things difficult out of spite for others and "would go to great lengths to get her way." There must be a very high showing before a jury's verdict will be discarded and judgment declared as a matter of law. Here, the jury could conclude that the posting of the stop work order was retaliatory.

The evidence regarding the lack of notice is somewhat weaker, but still enough to support the jury's verdict. The intentionality of the act is in dispute, as the lack of notice resulted from a miswritten address on the envelope sent to the Paeths informing them of the hearing (7344

Maplewood instead of 7433) and the late date on which the letter was sent, seven days before the hearing. However, no member of the Board followed up on the lack of notice, which was supposed to involve newspaper publication and notice to neighbors as well. The failure to provide these other forms of notice is harder to attribute to accident or oversight. The jury was also informed that after the Paeths won their first appeal in January 2006, the next step should have been prompt further proceedings. Instead, five months later, a hearing without notice was conducted. One could draw an inference of a causal connection not only because of the temporal proximity of the actions, but also their related content. There was enough evidence that a juror could infer that the failure to provide notice was intentional, and done in retaliation for the Paeths' appeal.

2. Municipal liability

Municipal liability could attach to the ZBA's decision to deny the Paeths a variance. The ZBA is a policymaking body within the Township, because its decisions are not reviewed by any superior officials. *See Adair v. Charter Country of Wayne*, 452 F.3d 482, 493 (6th Cir. 2006) (reciting standard). Its decision to deny the Paeths a variance falls under the definition offered in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), of municipal policy: "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." This is not a situation where a single officer made a decision absent the knowledge or approval of her peers. The ZBA acted as a unit. It was composed of municipal officers, and its decision represented the official policy of the Township as regarded the Paeths' request. So long as "a deliberate choice to follow a course of action is made from among various

- 12 -

alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question," municipal liability can attach. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Here, that requirement has been satisfied.

The stop work order issued by Cutcher is a closer question, but there was enough evidence offered that municipal liability might attach such that the question could withstand summary judgment. Testimony was offered that Cutcher was operating under the instructions of Bartniczak, a member of the Township Board, and with the knowledge of another member of the Board, Jonathan Rundels, who did nothing to stop the action. Township Board members are officials high enough in the municipality that their actions, like those of the officers in *Ford*, "may fairly be said to represent official policy." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (internal citation omitted). The circumstances of this case allow a reasonable juror to conclude that the Board was in tacit agreement that if Bartniczak wanted to retaliate against the Paeths through official channels, no one would stand in her way. If the stop work order was posted with the knowledge of at least two Board members, a reasonable fact finder could conclude that it represented official Township policy.

C. Denial of motion for new trial or remittitur

The district court did not abuse its discretion when it denied Worth Township's motion for a new trial or for remittitur, because the damages awarded were not inordinately excessive. As the district court pointed out, in addition to roughly $67,000 of chronicled costs for insurance, mortgage, taxes, and legal fees, the Paeths also testified that they endured much more: time off from work to

deal with both the Township's administrative processes and the circuit court litigation; the inability to procure additional financing; the need to exhaust their personal savings and cash in their life insurance policy and retirement plans; the paralysis of not being able to live in their home, but also not to sell it or buy another property; personal humiliation and reputational harm from the community continuing to believe that they flagrantly violated the law; marital strain from living in close quarters and the inability to resolve the housing issues; and the constant and crippling uncertainty about what would happen on a daily basis for years. The jury's assigning of roughly $210,000 for these factors is high, and it is possible that another district court may have found the amount too high if a narrow focus were kept on the actual violative acts, but it was not an abuse of discretion on the part of the district court to accept it in this case.

A district court examining the record could reasonably conclude that the verdict was not clearly excessive; district courts are instructed only to remit if the verdict "resulted from passion, bias, or prejudice; or is so excessive or inadequate to shock the conscience of the court" *Sykes v. Anderson*, 625 F.3d 294, 322 (6th Cir. 2010). We in turn offer an additional layer of deference to the jury award since we will only reverse if we find that the district court's assessment was an abuse of discretion. The Township's argument is that the testimony of George and Margaret Paeth was insufficient to account for the damages awarded. Under our deferential scope of review, this argument is unavailing, and the cases cited to the contrary do not counsel otherwise. In *Rogers v. Fisher Body Division*, 739 F.2d 1102, 1106-07 (6th Cir. 1984), this court overturned the verdict because it concluded that the jury had not received adequate guidance in calculating the damages.

- 14 -

In *Davis v. Mansfield Metropolitan Housing Authority*, 751 F.2d 180, 186 (6th Cir. 1984), there was a higher standard of proof mandated by statute before damages could be issued. In *Sykes*, this court expressed no opinion on the appropriateness of the damages, and instead remanded the case because the district court failed to explain its reasons for denying the motion. 625 F.3d at 323. The district court did so, and its judgment was affirmed. *Sykes v. Anderson*, 419 F. App'x 615, 617 (6th Cir. 2011). Here, the district court provided ample explanation.

D. Cross appeal on attorneys fees

The district court also did not abuse its discretion when it awarded only a portion of the attorneys fees requested by the Paeths. The district court laid out its reasoning clearly, applied proper legal standards, and made mathematically sound calculations. The Paeths' arguments to the contrary amount to nothing more than disagreement with the district court's conclusions, which does not merit reversal.

The district court acted within its discretion when it decreased the hourly rates for each of the three attorneys on the case, as well as the hours billed. The district court explained that it calculated reasonable rates for each of the attorneys by referring to the prevailing market rates in the area, a practice recommended by *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The district court also offered adequate explanation for why it reduced the hours worked, explaining that it found some of the hours billed excessive, redundant, or unnecessary, all factors that allow a district court to find hours not to be reasonable. The Paeths sought the fees, and so the burden of proof was on them to

substantiate the hours worked and rate claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The district court determined that they had not, and so lowered the rates accordingly.

It was also not an abuse of discretion for the district court to decline to assess separately the hours worked by a law student. The district court acknowledged that the law student did engage in legal research and drafting, but noted that "the majority of his time was devoted to clerical and delivery tasks." The district court relied on *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989), to conclude that any work done by the law student that could be billed was already taken into account in the attorneys' rates, who presumably reviewed it. The Paeths had offered no documentation to support their request that the student's work be covered, nor did they explain why it should be billed at $110 per hour beyond saying that such a practice was customary. It was within the district court's discretion to decline that request.

### III.

We reverse the grant of summary judgment on the procedural due process violation and vacate the award of damages for that violation. We affirm the judgment of the district court with regard to the First Amendment violation, the award of damages for that violation, and the award of attorneys fees.

ROGERS, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's opinion except to the extent that it affirms the damages granted to the Paeths. The district court should have granted Worth Township's motion for a new trial or for remittitur, because the damages awarded were grossly excessive. The proven unlawful actions by Worth Township consisted of two things: the failure to provide notice for the second variance hearing, and the posting of the stop work order without notice. The consequences of these actions lasted at most a few months, and the latter could have been resolved much more quickly had the Paeths simply reapplied for their building permit. Damages in both instances seem to involve preventing the Paeths from continuing construction and compelling them to file another appeal with the circuit court. There is no way that $275,000 worth of damages could be shown on the record.

The jury's assigned damages cannot be justified when looking only at what resulted from the activity at issue here, as opposed to the decade-long saga outlined in the briefs and to the jury. When George and Margaret Paeth testified about the financial and emotional strain they underwent, these injuries resulted only in small part from the proven unlawful activity. Nowhere is there mention of how any of the damages they mention relate to these two particular acts. Nor, as the Township points out, do the damages they claim for the decade have many fixed amounts attached to them. Perhaps if the entire tale were under consideration such an award could have been reasonable, but the district court's instructions make it clear that the jury should only have looked to the proven unlawful activity of the Township; the jury does not seem to have listened. District courts are instructed only to remit if the verdict "resulted from passion, bias, or prejudice; or is so excessive

or inadequate to shock the conscience of the court" *Sykes v. Anderson*, 625 F.3d 294, 322 (6th Cir. 2010). This is an instance of a damages award that likely resulted from passion, and the amount should have shocked the conscience of the court. I would remand for the district court to enter a remittitur in the largest amount that the district court determines could reasonably be found as a result of the particular actions found by the jury to be First Amendment violations.