# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 25-7060**

**September Term, 2025**

FILED ON: OCTOBER 24, 2025

PHEENIX USH LLC, DOING BUSINESS AS SPIN,
APPELLANT

v.

DISTRICT DEPARTMENT OF TRANSPORTATION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:25-cv-00922)

Before: HENDERSON and KATSAS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*

## J U D G M E N T

The Court has considered this appeal on the record from the District Court for the District of Columbia and on the parties' briefs. The Court has accorded the issues full consideration and has determined they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

**ORDERED** that the judgment of the district court be **AFFIRMED**.

I

Companies renting electric scooters and bikes in the District of Columbia's public right-of-way must receive a permit from the District Department of Transportation. D.C. Code §§ 50-2201.03c(a), 50-2201.02(5A), (14D)–(14E). The Director of the Department oversees the application process. *Id.* § 50-2201.03c(b)(1). No applicant is entitled to a permit; the Director may refuse to issue permits or limit their number. *Id.* § 50-2201.03c(b)(3).

Permits expire every two years, so companies must regularly apply for new ones. D.C. Mun. Regs. tit. 24, § 3314.6(b). To evaluate applications, the Director created a points-based scoring system. *Id.* § 3317.2–.4. Rejected applicants may pursue an administrative appeal. *Id.* § 3317.8. A hearing officer reviews the appeal and makes a recommendation to the Director, who then issues the Department's final decision. *Id.* § 3317.11–.13.

For the 2025–26 permitting cycle, the Department published its scoring system and required applicants to demonstrate their devices in person.

## II

From 2019 through 2024, Pheenix USH LLC, which calls itself Spin, received such permits. For the 2025–26 permitting cycle, however, the District denied Spin's application and granted permits to higher-scoring competitors, including a company called Bolt. The Director affirmed the denial and ordered Spin to remove its devices from the streets.

Spin sued. It alleged that denial of the permit violated the Fifth Amendment and was arbitrary under D.C. law. The district court denied Spin's motion for a preliminary injunction. The court held that Spin was unlikely to prevail on its constitutional claims. And because those claims were bound to fail, the court was unlikely to exercise supplemental jurisdiction over the remaining local-law claim.

Spin appealed. We have jurisdiction under 28 U.S.C. § 1292(a)(1).

## III

To obtain the "extraordinary remedy" of a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20, 24 (2008). This Court has reserved whether likelihood of success is a necessary showing or just one factor to be balanced. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). Either way, "the movant must raise at least a serious legal question on the merits." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (cleaned up). The district court concluded that Spin was not likely to succeed on the merits. We review its legal conclusions *de novo* and its factual findings for clear error. *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1233–34 (D.C. Cir. 2025).

### A

Spin asserts a due-process claim. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (cleaned up). Spin asserts both protected property and liberty interests, yet it has neither.

Spin claims a property interest in a new permit because it held permits in the past. But no constitutionally protected property interests arise when the government has discretion to award nothing at all. *See, e.g., C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 200 (D.C. Cir. 2002). Because the Director may decline to issue permits, D.C. Code § 50-2201.03c(b)(3), Spin has no property interest in receiving one. Spin was merely "an *applicant*" for the 2025–26 permit, *see 3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1072 (D.C. Cir. 2003), and applicants subject to broad agency discretion have no protected property rights, *see, e.g., Lopez v. FAA*, 318 F.3d 242, 249 (D.C. Cir. 2003); *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997).

Spin relies on *Bird Rides, Inc. v. District of Columbia Department of Transportation*, No. 2023-CAB-000316, 2023 WL 12077712 (D.C. Super. Ct. Sep. 20, 2023), which involved the same permitting scheme at issue here. After noting that a licensee had a constitutionally protected

property interest in its *existing* permit, the Superior Court extended that interest to its application for a *new* permit. *See id.* at *5. With due respect, we do not find *Bird Rides* persuasive. As Spin concedes, existing permits neither renew automatically nor create any right of renewal. So regardless of how many permits Spin previously held, the Director had broad discretion to deny it a new one, which forecloses any "legitimate claim of entitlement" to a renewed permit. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Wash. Legal Clinic for the Homeless*, 107 F.3d at 36.

Spin also seeks to locate an implied property interest in the Department's policies, practices, or understandings. Spin invokes *Richardson v. Town of Eastover*, 922 F.2d 1152 (4th Cir. 1991), where granting the license was "a mere ministerial act." *Id.* at 1158. But as explained above, renewals here were committed to the Director's discretion by law, so Spin could not legitimately claim that it was entitled to renewal.

Spin further claims a protected liberty interest "to follow a chosen profession free from unreasonable governmental interference." *Greene v. McElroy*, 360 U.S. 474, 492 (1959). It argues that the Department's denial (1) bars it from its chosen trade and (2) stigmatizes its brand. Both arguments fail. First, although debarment would implicate a protected liberty interest, *see Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643–44 (D.C. Cir. 2003), Spin was not debarred. Despite not obtaining this one permit, Spin can compete in the future for any permits or contracts it desires. The Director even invited Spin "to apply in any future permit application periods." J.A. 148. Second, Spin forfeited its stigmatization argument by not raising it below. *Campbell v. District of Columbia*, 894 F.3d 281, 288 (D.C. Cir. 2018). And in any event, Spin has not shown that any stigma from not obtaining this permit would preclude it from pursuing its business. *O'Donnell v. Barry*, 148 F.3d 1126, 1140–41 (D.C. Cir. 1998).

B

Spin next argues the Department violated its right to equal protection. The company must show "(1) disparate treatment of similarly situated parties (2) on no rational basis." *3883 Conn. LLC*, 336 F.3d at 1075. It argues the Department treated Bolt more favorably by extending its deadline for the in-person demonstration.

This argument also fails. Although Spin and Bolt both applied for the same permit, Bolt received a short extension because of international shipping delays. This is a relevant "differen[ce] in fact" that makes the two companies dissimilar. *See Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (cleaned up). Spin harps on a guidance document disfavoring extensions, but the guidance merely declined a blanket two-week extension "at this time." *See* J.A. 75. It did not foreclose a single, one-week extension of the device demonstration based on particularized need. In any event, the Department had a legitimate interest in getting the best applications, and Bolt's short extension was rationally related to that interest.

C

Finally, Spin argues the district court erred in predicting that, if the constitutional claims were dismissed, it would decline to exercise jurisdiction over the remaining local-law claim.

A district court with original jurisdiction over a claim also has supplemental jurisdiction over claims that "form part of the same case or controversy." 28 U.S.C. § 1367(a). Yet a court

3

"may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). In that circumstance, "the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31–32 (2025).

Under these principles, the district court here would be well within its discretion to decline supplemental jurisdiction after dismissing the federal claims. Spin objects that the district court erred by basing its jurisdictional analysis on a premature assertion that the federal claims would be dismissed. But in making "a prediction of the likelihood of success on the merits," *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025), a court must assess the likelihood that jurisdiction exists, *see Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). And in evaluating whether it was likely to have supplemental jurisdiction over Spin's local-law claim, the district court reasonably predicted that it would likely dismiss the meritless constitutional claims and then, as a consequence, decline to exercise supplemental jurisdiction. Spin also contends that the district court irreversibly exercised supplemental jurisdiction by preliminarily analyzing its D.C.-law claim. However, a district court's preliminary analysis of the merits does not foreclose it from later declining supplemental jurisdiction. *See Cassell v. Snyders*, 990 F.3d 539, 544, 554 (7th Cir. 2021).

IV

For these reasons, we affirm the district court's judgment. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

4