Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 01-1427          **September Term, 2002**

Filed On: February 11, 2003

CARLOS LOPEZ,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

**BEFORE**: Edwards, Rogers and Garland, Circuit Judges

## O R D E R

It is **ORDERED**, on the court's own motion, that the opinion filed on February 11, 2003, be amended as follows:

Page 1, first line of opinion heading, delete "Argued December 6, 2002" and "Decided February 11, 2003" and insert in lieu thereof "Filed February 11, 2003"

Page 1, line 10 of the opinion heading, delete "argued the cause and filed the briefs for petitioner" and insert in lieu thereof "was on the briefs for petitioner"

Page 1, line 12 of the opinion heading, delete "argued the thereof "was on the brief for respondent"cause and filed the brief for respondent" and insert in lieu

<u>**Per Curiam**</u>

**FOR THE COURT:**

Mark J. Langer, Clerk

BY:

Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed  February 11,  2003

No. 01-1427

CARLOS LOPEZ,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

————

On Petition for Review of an Order of the
Federal Aviation Administration

————

*David M. McDonald* was on the briefs for petitioner.

*Kenneth G. Caplan*, Special Attorney to the Attorney General, Federal Aviation Administration, was on the brief for respondent.

Before:  EDWARDS, ROGERS and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* ROGERS.

————

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

ROGERS, *Circuit Judge*: Carlos Lopez petitions for review of the decision of the Federal Aviation Administration ("FAA") not to renew his appointment as a Designated Engineering Representative ("DER"). He challenges the decision on substantive and procedural grounds as well as maintaining that he had a property and liberty interest in the continued renewal of his designation, entitling him to due process under the Fifth Amendment. Although the court does not have jurisdiction to review the substance of the FAA's decision because it is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2) (1996), the court does have jurisdiction to review Lopez's procedural claim that the FAA failed to follow its nonrenewal procedures. Insofar as there was any such failure, we hold that Lopez has failed to show prejudice and that, in light of circuit precedent, because his claim of a liberty or property interest in a DER designation is without merit, Lopez cannot show that he was entitled to renewal of his status or to constitutional due process. Accordingly, we deny the petition for review.

## I.

Under the Federal Aviation Act ("Act"), 49 U.S.C. § 44702(d)(1), the FAA Administrator "may delegate to a qualified private person" the authority to undertake the "examination, testing, and inspection necessary" to issue certificates identifying aircraft as compliant with FAA regulations. *See* 49 U.S.C. §§ 44702, 44704. The Administrator, through local Aircraft Certification Offices ("certification office"), has appointed a group of individuals, called DERs, to perform these tasks. 14 C.F.R. § 183.11(c)(1) (2002). DER appointments are for one year subject to renewal for additional one-year periods at the Administrator's discretion. 14 C.F.R. § 183.15(b). The Administrator may rescind such appointments, or choose not to renew them, at "any time for any reason the Administrator considers appropriate." 49 U.S.C. § 44702(d)(2); 14 C.F.R. § 183.15(d).

In accordance with FAA regulations, DERs may perform their responsibilities on U.S. registered aircraft located

abroad under certain limited conditions if they have prior approval of the certification office. *Designated Engineering Representative (DER) Guidance Handbook*, FAA Order 8110.37C ¶ 609 (Sept. 30, 1998). The regulations require, as relevant here, that before granting such approval, the certification office provide the foreign civil aviation authority ("CAA") with written notification requesting its concurrence in the proposed work. *Id.* at ¶ 609(b)(3)(a). Only after receiving approval from the CAA, will the certification office authorize the proposed DER activity. *Id.* at ¶ 609(b)(3)(a). The regulations also require DERs to obtain specific authorization from the certification office prior to authorizing a major repair or alteration of an aircraft, regardless of whether it is located in the United States or a foreign country. *Id.* at ¶ 611(c).

The FAA reviews the performance of DERs annually. *Id.* at ¶¶ 703–04. The regulations provide that if the FAA decides to terminate or not renew a DER's designation, the DER is to be sent written notice of the decision at least thirty days before the intended effective date, including specific reasons for it, and is to be given an opportunity to respond in writing or in person. *Id.* at ¶ 706(b); *see also Procedures for Termination/Nonrenewal of Aircraft Certification Service Designations and Delegations*, FAA Order 8130.24 ¶ 6 (Oct. 21, 1991). The regulations also provide for two levels of agency review. Thus, if the DER requests review of the decision, a first-level review is conducted by the appointing certification office manager. FAA Order 8110.37C ¶ 706(c)(1). If the DER seeks further relief, the DER is entitled to a second-level review by the manager of the appropriate geographic directorate. *Id.* at ¶ 706(c)(2). If the directorate manager concurs with the decision to terminate or not renew, the regulations require that a letter be sent to the DER reciting the justifications for the decision and advising the DER that the decision is final. *Id.* at ¶ 706(c)(3). The regulations also require this notice to indicate that the DER's remaining legal remedy is an appeal to a federal appeals court, as provided in FAA Order 8130.24 ¶ 7(b)(2). *Id.*

Lopez received notice that his DER would not be renewed and pursued the two levels of review. By letter of February 15, 2000, Melvin D. Taylor, the manager of the Atlanta certification office, informed Lopez that his DER designation would not be renewed when it expired on February 29, 2000. Taylor stated that his decision was based upon findings that Lopez had neither "properly exercised and performed the duties of [his] designation" nor "demonstrated the care and integrity necessary to merit special public responsibility." These general findings were based, in turn, upon more particular concerns that Lopez had (1) approved engineering data and found compliance with FAA regulations outside his delegated authority; (2) failed to notify and obtain authorization from the certification office before performing work on aircraft outside the United States and failed to notify the certification office of his anticipated activities and length of stay in Europe; and (3) failed to adhere to "good practice" principles while acting as an FAA designee. With respect to Lopez's failure to adhere to "good practice" principles, Taylor stated that Lopez had exhibited a lack of integrity with regard to his contacts with the FAA and the *Direction Generale de L'Aviation Civile* ("DGAC") while in France; failed to notify the certification office of his foreign activities after having been counseled to do so; and created international friction between the FAA and the DGAC by trying to obtain a U.S. Supplemental Type Certificate ("STC") for a French company with regard to a U.S.-registered aircraft in violation of the United States and French Bilateral Airworthiness Agreement. (In regard to the latter, Lopez sent letters to his Congressman and the Commerce Department's Inspector General seeking clarification of the FAA's approval process for STCs.) Taylor's letter informed Lopez that he could request reconsideration of the decision not to renew his DER status, and that his request should include information he wished the FAA to review. Lopez responded, by letter of February 24, 2000, to Taylor's reasons for not renewing his DER status, and requested reconsideration of Taylor's decision.

The first-level review took place on March 1, 2000. At that time Lopez's counsel submitted exhibits on Lopez's behalf and received documents from the FAA in support of Taylor's position. Following the meeting, Lopez's counsel wrote Taylor, on March 10, 2000, more extensively refuting Taylor's rationale for not renewing Lopez's designation. Taylor responded by letter of April 4, 2000, that "[a]fter reviewing the file and considering the information provided by [Lopez] and [his] counsel," the Atlanta certification office concluded that "the original findings" contained in the February 15 letter "were accurate and justifiable," and that consequently, Lopez's DER designation would not be renewed or reinstated. Taylor reiterated his reasons for his nonrenewal decision, and advised Lopez of his right to request reconsideration. On April 17, 2002, Lopez, through counsel, requested reconsideration of the decision reached by the Atlanta certification office from the manager of the Central Region Directorate, Mike Gallagher.

The second-level review took place on June 14, 2000. As a result of concern that the certification office had not taken "a more active role in reviewing [Lopez's] work," Gallagher, on August 3, 2000, informed Lopez of his interim decision to allow Lopez to function on a Recommend Only Approval status for a period of six months. During that time, Lopez would be required to submit Recommend Only Approval requests for evaluation by the Atlanta certification office; failure to submit projects, or submission of projects of minimal difficulty would result in Lopez's termination. Gallagher denied Lopez's request for reconsideration of the interim decision for failure to raise any new issues. When Lopez subsequently complained that he could not find any work to perform on a Recommend Only Approval basis, Gallagher, on November 21, 2000, extended the time period for Lopez to find work. Having received no submissions from Lopez as of May 18, 2001, Gallagher wrote Lopez that he had ninety days to submit data for review or face termination. On August 20, 2001, upon receiving no submissions, Gallagher issued a final decision terminating Lopez's DER appointment effective immediately. Lopez now seeks relief from the court.

## II.

On appeal, Lopez challenges the FAA's decision not to renew his DER designation on three grounds: first, the decision was arbitrary and capricious, and that insofar as it was a retaliatory response to Lopez's complaint to his congressman and the Inspector General about how the FAA handled his work abroad, it was an abuse of process; second, the FAA failed to follow its internal procedures for nonrenewal of DERs; and third, the FAA violated his Fifth Amendment due process rights to property and liberty.

### A.

As a threshold matter, the FAA maintains that the court does not have jurisdiction to review the substance of its nonrenewal decision because the decision is committed to agency discretion by law. Most recently, in *Steenholdt v. FAA*, 2003 WL 69564 *4–5 (D.C. Cir. 2003), the court held that because the decision not to renew a DER delegation is committed to the Administrator's discretion under 49 U.S.C. § 44702(d), judicial review of the substantive merits of that decision is precluded under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2). *See also Greenwood v. FAA*, 28 F.3d 971, 974–75 (9th Cir. 1994); *Adams v. FAA*, 1 F.3d 955, 956 (9th Cir. 1993). There is no need to repeat the court's analysis in *Steenholdt*. Accordingly, in light of *Steenholdt*, we hold that we lack jurisdiction to review Lopez's contention challenging the FAA's nonrenewal decision on substantive grounds as being arbitrary and capricious and an abuse of process.

### B.

The FAA similarly maintains that the court does not have jurisdiction to consider Lopez's procedural challenge to the nonrenewal decision because the FAA's nonrenewal procedures are also committed to agency discretion as a matter of law. Alternatively, the FAA maintains that, if the court does have jurisdiction, Lopez's procedural challenge fails because the FAA substantially followed its internal procedures, and to

the extent that it did not, Lopez failed to prove he was prejudiced.

Most recently, again in *Steenholdt*, the court rejected a challenge to the FAA's nonrenewal of a DER on the ground that the FAA had failed to follow its procedures. 2003 WL 69564 at *6. In *Steenholdt*, the petitioner argued that the court had jurisdiction to review his procedural challenge because, under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), federal agencies are required to "follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions." 2003 WL 69564 at *6. Without expressly adopting the *Accardi* doctrine, the court implicitly held that it had jurisdiction to address the procedural challenge, citing *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1098 (D.C. Cir. 1985), for the proposition that courts "have long required agencies to abide by internal, procedural regulations . . . even when those regulations provide more protection than the Constitution or relevant civil service laws." The court otherwise left undefined the analysis by which it reached the conclusion that it had jurisdiction. Today, we fill that gap.

In a series of decisions, the Supreme Court has entertained challenges to agency actions that failed to conform to agency regulations. In *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943), the Court held that an agency is bound to the standards by which it professes its action to be judged. In *Accardi*, a case involving a habeas challenge to the denial of suspension of deportation, the Court objected to the agency's "alleged failure to exercise its own discretion contrary to existing valid regulations." 347 U.S. at 268. In the employment context, the Court held in *Service v. Dulles*, 354 U.S. 363, 373–76 (1957), that where dismissal from employment is based on a defined procedure, even though generous beyond the requirements binding the agency, that procedure must be scrupulously observed, and in *Vitarelli v. Seaton*, 359 U.S. 535 (1959), that the dismissal of a former government employee was illegal and of no effect because the agency's dismissal "fell substantially short of the requirements of the applicable department regulations." *Id.* at 545. *See also Morton v. Ruiz*, 415 U.S. 199, 234 (1974); *Lincoln v. Vigil*, 508 U.S. 182

(1993). In other words, "[a] court's duty to enforce an agency regulation [, while] most evident when compliance with the regulation is mandated by the Constitution or federal law," *United States v. Caceras*, 440 U.S. 741, 749, embraces as well agency regulations that are not so required.

The Supreme Court has, however, distinguished between the types of internal agency regulations that are reviewable. In *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970), a case involving regulations designed to provide the agency with information it needed to reach an informed decision, the Court held that the regulations were unreviewable absent a showing of substantial prejudice by the complaining party. On the other hand, had the agency's rules been "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion as in *Vitarelli*," *id.* at 538–39, or had the agency failed to exercise independent discretion required by the rule, as in *Accardi, id.* at 539, the Court indicated the case would be "exempt" from the general principle that an administrative agency may "relax or modify its procedural rules adopted for the orderly transaction of business . . . when . . . the ends of justice require it." *Id.*

Given this instruction, this court has been careful to distinguish between procedural rules benefitting the agency (*American Farm Lines*) and procedural rules benefitting the party otherwise left unprotected by agency rules (*Vitarelli*), as well as cases in which the agency has failed to exercise discretion required by its regulations (*Accardi*). *Compare Associated Press v. FCC*, 448 F.2d 1095, 1105 (D.C. Cir. 1971), *Mun. Light Bds. v. FPC*, 450 F.2d 1341, 1347–48 (D.C. Cir. 1971), *and Neighborhood TV Co. v. FCC*, 742 F.2d 629, 636 (D.C. Cir. 1984) *with Doe*, 753 F.2d at 1098, *and Mazaleski v. Treusdell*, 562 F.2d 701, 719 (D.C. Cir. 1977). These distinctions are particularly visible in the employment context, where this court has long recognized that, contrary to the type of internal regulations in *American Farm Lines*, agencies cannot "relax or modify" regulations that provide the only safeguard individuals have against unlimited agency discretion in hiring and termination. Thus, in *Mazaleski*, the

court held, citing *Vitarelli*, that where "a government employee has no procedural due process rights apart from those which the agency has chosen to create by its own regulations, scrupulous compliance with those regulations is required to avoid any injuries." 562 F.2d at 719. The court rejected the notion that a "failure to inform [the employee] of the specific grounds of the termination decision, though merely an oversight, can[ ] be excused as a de minimus or harmless violation of its own regulations." *Id.* Likewise, in *Doe* the court explained, citing *Vitarelli* and *Service*, that when agencies establish "special" "pre-termination procedures," they are bound to follow them. 753 F.2d at 1098. Our sister circuits have similarly required agencies to follow procedural rules "designed to benefit aggrieved parties during [employment] proceedings." *Bates v. Sponberg*, 547 F.2d 325, 330 nn.6–7 (6th Cir. 1976); *see also Gaballah v. Johnson*, 629 F.2d 1191, 1202–03 (7th Cir. 1980).

The FAA's procedures challenged by Lopez are not primarily intended to provide information to the agency, but are instead aimed at protecting the DER from the Administrator's otherwise unlimited discretion. It is uncontested that FAA Orders 8110.37C and 8130.24 provide procedural safeguards that are the only available protection for DERs whose designation can otherwise be terminated by the FAA for "any reason considered appropriate by the Administrator." 49 U.S.C. § 44702(d)(2); 14 C.F.R. § 183.15(d); FAA Order 8130.24(5)(a)(10). The Administrator issued FAA Order 8110.37C to "prescribe[ ] the guidance and procedures to be used . . . in administering the Designated Engineering Representative management program," *id.* at ¶ 1, and issued Order 8130.24 to "ensure that due process is accorded before a final decision is made on termination or nonrenewal of [DER] designations." *Id.* at ¶ 1. We hold, as the court implicitly held in *Steenholdt*, 2003 WL 69564 at *6, that the court has jurisdiction to review whether the FAA followed its procedural rules in terminating Lopez's DER status because "scrupulous observance of departmental procedural safeguards is clearly of particular importance" where no other agency rules protect the employee. *Vitarelli*, 359 U.S. at 540.

Lopez's procedural challenge focuses on two FAA failures as requiring reversal of the nonrenewal decision: the FAA failed first, to provide him with thirty days advance written notice of its decision not to renew his DER designation, as required by FAA Order 8110.37C ¶ 706, and second, to counsel him about his shortcomings prior to making its nonrenewal decision, as required by FAA Order 8110.37C ¶ 700(b). As to the first failure, Lopez does not indicate how he was prejudiced by receiving less than thirty days notice of the FAA's decision, and nothing in the record indicates that he was. He responded to the initial notice from Taylor and pursued his rights under the FAA regulations to seek reconsideration from the agency. With the assistance of counsel he submitted materials on several occasions in support of his defense to the original claim that his performance was unsatisfactory. Lopez does not argue either that he was pressed for time in responding to the FAA's view of his performance or that other defenses would have been presented with additional time. Thus, his circumstances are readily distinguishable from those in *Vitarelli,* where the denial of material procedural protections left the former government employee at a severe disadvantage in defending against his dismissal. *Vitarelli*, 359 U.S. at 540–44. As to the second failure, the record shows that any failure of the FAA not to afford counseling to Lopez was ameliorated by its subsequent actions: in his August 3, 2000 letter to Lopez, the directorate manager issued an interim decision, that he later extended, providing Lopez with a further opportunity to demonstrate that he could perform DER work at an acceptable level. Yet over the course of more than a year, Lopez never submitted any work for review. Moreover, the record reveals disputes over performance that were not remediable by mere counseling; the FAA would have had to change practices and policies to allow Lopez to perform as he had. Under the circumstances, Lopez fails to show that the FAA's initial oversight was other than harmless. *See Mazaleski*, 562 F.2d at 719. Consequently, we conclude that Lopez fails to show that the proceedings leading to the nonrenewal of his DER status "fell substantially short of the requirements of the applicable

departmental regulations." *Vitarelli*, 359 U.S. at 544, resulting in prejudice to him. *Steenholdt*, 2003 WL 69564 at *6.

## C.

Finally, as follows from our decision in *Fried v. Hinson*, 78 F.3d 688 (D.C. Cir. 1996), Lopez's challenge on constitutional grounds to the FAA's nonrenewal decision fails. Lopez contends that his Fifth Amendment due process rights to property and liberty were violated by the FAA's failure to renew his DER designation and by the FAA's alleged public disclosures of the reasons for his discharge.

In *Fried* the court held that a Designated Pilot Examiner ("DPE") does not have a legitimate property or liberty interest in his DPE delegation. *See also Greenwood*, 28 F.3d 971. Explaining why a DPE has no cognizable property interest in renewal of that designation, the court pointed to 49 U.S.C. § 44702(d), which allows the Administrator to "rescind [this] delegation . . . at any time for any reason," and 14 C.F.R. § 183.15, which permits the FAA to determine annually whether to renew a designee. *Id.* at 692. These same provisions apply to DERs who, like DPEs, serve at the FAA's discretion and therefore have no more "than a unilateral expectation" of renewal. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Any doubt that DERs lack a property interest in renewal of their designation is clarified by FAA Order 8110.37C ¶ 5(b), which states: "Designation of a private person as a DER is a privilege granted by the Administrator. It is not the right of every qualified applicant to be granted a DER designation." Combined with Lopez's admission that "a DER designation is a privilege and not a right," Petitioner's Br. at 25, we hold that he has no property right in his DER status.

Furthermore, as in *Fried*, Lopez does not have a legitimate liberty interest because nonrenewal neither automatically bars him from future jobs nor stigmatizes him in a way that would "substantially preclude the professional use of his skills." *Fried*, 78 F.3d at 692 (citation omitted). Lopez's

contention that the FAA violated his liberty interest is based on a September 13, 1999 letter that the manager of the FAA's International Airworthiness Programs Staff, sent Lopez's client, Aviation Sale and Leasing Corporation, which stated in relevant part:

> While we understand your company's sense of urgency because of a pending customer for these aircraft, we believe this situation was unnecessarily complicated through the actions of your representative in France, Mr. Carlos Lopez. The advice and actions taken by Mr. Lopez were not correct for modification of N-registered aircraft.

Lopez maintains that the letter was a "stigmatizing public disclosure" that adversely affects his business reputation. He provides no evidence, however, that the letter impugned his good name, reputation, honesty or integrity, *Roth*, 408 U.S. at 573, let alone that it "substantially preclude[s]" the use of his skills. *Fried*, 78 F.3d at 692. Although Lopez cannot serve as a DER for the FAA, he has not been deprived of his career as an engineer, *Roth*, 408 U.S. at 573. Without loss of some legitimate protected interest, Lopez's claim that the FAA violated his constitutional right to due process is unsustainable.

Accordingly, because the court does not have jurisdiction to review the substance of the FAA's nonrenewal decision, because any FAA failure to follow internal nonrenewal procedures caused no prejudice to Lopez, and because his constitutional claim is without merit, we deny the petition for review.