# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Submitted October 14, 2016      Decided December 23, 2016

No. 15-5212

MICHAEL CROOKS,
APPELLANT

v.

RAYMOND EDWIN MABUS, JR., SECRETARY OF THE NAVY AND
DEE MEWBOURNE, REAR ADM, USN, NAVAL SERVICE
TRAINING COMMAND,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01614)

*John B. Wells* was on the briefs for appellant.

*R. Craig Lawrence* and *Jason T. Cohen*, Assistant U.S. Attorneys, were on the brief for appellees. *Fred E. Haynes*, Assistant U.S. Attorney, entered an appearance.

Before: TATEL, *Circuit Judge*, and EDWARDS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: The Navy maintains a Junior Reserve Officers' Training Corps ("NJROTC") at public and private secondary schools that apply to establish a unit and meet the applicable statutory standards. 10 U.S.C. § 2031(a)(1). To support the program, the Secretary of the Navy may detail certain "retired officers and noncommissioned officers," in addition to other qualified individuals, to serve as NJROTC instructors. 10 U.S.C. § 2031(c)–(d). Certification as an "instructor in leadership, wellness and fitness, civics, and other courses related to the content of the program," 10 U.S.C. § 2033(a), is a prerequisite for retired officers or noncommissioned officers to serve as NJROTC instructors. The Navy retains the authority to revoke an instructor's certification if it determines that the person's "continued certification . . . is not in the best interests of the program." Commander, Navy Education and Training Command Instruction ("CNETINST") 1533.9K, Art. 404(e)(5). In making such a determination, the Navy considers the instructor's "conduct, performance, and evaluations." *Id.*

Appellant Michael Crooks retired as a Major in the United States Marine Corps on June 30, 1994. Shortly before his retirement, the Navy certified him as a NJROTC instructor. From 1995 to 2008, Appellant was employed as a Senior Naval Science Instructor ("SNSI") at Pearl River High School's NJROTC program in Pearl River, Louisiana. On November 16, 2007, following receipt of unfavorable reviews from the Principal of Pearl River High School and a NJROTC Area Manager, the NJROTC Program Manager revoked Appellant's certification. Decertification Letter, Joint Appendix ("JA") 50. On October 22, 2013, after two NJROTC Instruction Certification Boards upheld his decertification, Appellant filed suit in District Court to contest his removal from the NJROTC program. On May 20, 2015, after reviewing the parties' cross-motions for summary

judgment, the District Court granted judgment to the Navy. Appellant now appeals.

In challenging the District Court's judgment, Appellant advances three principal arguments. First, he contends that the regulation on which the Navy relied to revoke his certification is unconstitutionally vague. He also asserts that the Navy denied him due process because it failed to accord him adequate notice and opportunity to be heard when determining whether he should be permitted to continue to serve as a NJROTC instructor. Finally, he claims that the Navy's decertification decision was arbitrary and capricious and unsupported by substantial evidence. For the reasons explained below, we find no merit in these claims. We therefore affirm the judgment of the District Court.

## I.   BACKGROUND

Until 2006, Appellant apparently received positive reviews and evaluations of his performance as a NJROTC instructor at Pearl River High School. However, beginning in 2006, a number of parties, including students, the Principal of Pearl River High School, and the NJROTC Area Manager who was tasked with reviewing Appellant's work raised concerns about his performance and conduct. The criticisms levied against Appellant included claims that he slept during class, left NJROTC student cadets unattended, failed to adhere to the NJROTC curriculum, and did not meet the NJROTC's mandatory bodyweight requirement. 2007 NJROTC Instructor Evaluation, JA 51. At some point during the decertification process, the Principal of Pearl River High School provided the Navy with a letter alleging that Appellant had "falsely report[ed] to the U.S. Navy the number of students enrolled at the school which was indicating to the Navy he met the ten percent quota [necessary] to keep the unit

from going on probation." JA 191; *see* JA 189–92. Cadets and their parents also submitted letters and emails suggesting that the substance of Appellant's classes was not in line with the NJROTC's curriculum. They also complained about Appellant's "alienat[ing] . . . class behavior," which included "slamming a rod down on tables . . . grabbing cadets by the waist . . . prodding cadets with the same rod used to slam on tables, [and] calling cadets names such as 'stupid' and 'moron.'" JA 102; *see* JA 99–107.

On November 16, 2007, after receiving unsatisfactory evaluations from both the Principal and the NJROTC Area Manager, and after affording Appellant an opportunity to provide a written rebuttal of the charges leveled against him, the Navy advised Appellant that his certification in the NJROTC was "being revoked due to unsatisfactory marks on [his] Instructor Evaluation and Observation Report." Decertification Letter, JA 50. The parties agree that the decertification action was taken pursuant to CNETINST 1533.9K, Article 404(e)(5), which states that: "[Instructor c]ertification will be revoked . . . [if] upon consideration of the conduct, performance, and evaluations of an [instructor] by the school and/or designated inspectors, [the Chief of Naval Education & Training] determines that continued certification of the instructor is not in the best interests of the program." *See* Br. for Appellant at 15; Br. for Appellee at 46.

Following the initial decertification decision, Appellant's counsel sent a letter to the Navy demanding a "full hearing." JA 96. The Navy interpreted this as a "request for reconsideration" by a NJROTC Instructor Certification Board ("Certification Board"). JA 97. Prior to reconsideration by the Certification Board, Appellant was permitted to submit additional information, including the results of an

investigation conducted by his counsel's private investigator, the results of a polygraph test taken by Appellant, and letters from parents and former students who supported him. *See* JA 108–17, 131–36, 138–43, 157–59. The NJROTC Area Manager also provided the Certification Board with additional materials, including letters and emails from cadets and their parents regarding Appellant's conduct. *See* JA 98–107.

On April 23, 2008, the Certification Board affirmed the revocation of Appellant's instructor certification. JA 183–84. In justifying the action, the Certification Board members emphasized Appellant's deviation from the NJROTC curriculum, classroom absences, sleeping in class, and "incidents of alleged physical contact" with cadets. JA 176, 179. Appellant appealed the Board's decision and a second NJROTC Certification Board was constituted. On September 14, 2008, the second Board found that Appellant's NJROTC instructor certification should not be reinstated. JA 219.

On October 22, 2013, Appellant filed a complaint in the District Court seeking vacatur of the Navy's decision and the restoration of his certification. JA 25. The parties filed cross-motions for summary judgment and, on May 20, 2015, the District Court issued a memorandum opinion and order granting the Navy's motion for summary judgment and denying Appellant's motion for summary judgment.

## II. ANALYSIS

### A. *Standard of Review*

We review the District Court's grant of summary judgment *de novo*. *See Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 329 (D.C. Cir. 2011). "In a case like the instant one, in which the District Court reviewed an agency

action under the [Administrative Procedure Act ("APA")], we review the administrative action directly, according no particular deference to the judgment of the District Court. On an independent review of the record, we will uphold the agency action unless we find it to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A)." *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 814 (D.C. Cir. 2002); *see* EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 115–16 (2d ed. 2013).

**B. *The Navy Regulation in Article 404(e)(5) of CNETINST 1553.9K is Not Void for Vagueness***

Appellant was decertified pursuant to CNETINST 1533.9K, Article 404(e)(5), which provides that an individual's certification may be revoked if,

> upon consideration of the conduct, performance, and evaluations of an SNSI/NSI by the school and/or designated inspectors, [the Chief of Naval Education & Training] determines that continued certification of the instructor is not in the best interests of the program.

Appellant claims that this regulation violates the void-for-vagueness doctrine because "a person of ordinary intelligence [cannot] readily identify the applicable standard for inclusion and exclusion." Br. for Appellant at 16 (quoting *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 358–59 (6th Cir. 1998)). We disagree.

"Outside of the First Amendment context, a plaintiff must show that the law in question 'is impermissibly vague in all of its applications'" to succeed on a facial challenge. *Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 364 (D.C. Cir. 2007) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). *But cf. Johnson v. United States,* 135 S. Ct. 2551, 2556–62 (2015) (finding penal statutory provision was void for vagueness although it would be permissible as applied to some conduct because the statute required applying an uncertain term to "an idealized ordinary case of the crime," *id.* at 2651, and "not to real-world facts or statutory elements," *id.* at 2557). Appellant's claim falls far short of the "impermissibly vague in all of its applications" standard.

There are, as the Supreme Court has noted, "limitations in the English language with respect to being both specific and manageably brief." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 578–79 (1973). This tension was borne out in *Arnett v. Kennedy*, in which the Court concluded that a statute permitting termination of federal employees "as will promote the efficiency of the service" was not impermissibly vague on its face. 416 U.S. 134, 159 (1974). Justice Rehnquist's plurality opinion, whose reasoning was joined by a majority of the Court on this issue, rejected the notion that "a detailed code of employee conduct," rather than a more general standard was required when Congress was attempting to provide "myriad different federal employees performing widely disparate tasks a common standard of job protection." *Id.*; *see id.* at 164 (Powell, J. concurring); *id.* at 177 (White, J., concurring in part and dissenting in part). Crucial to the Court's decision in *Arnett* was the fact that Congress had not "written upon a clean slate" when it promulgated the contested standard. *Id.* at 160. Rather, as the Court noted, "[t]he Civil Service

Commission ha[d] indicated that what might be said to be longstanding principles of employer-employee relationships, like those developed in the private sector, should be followed in interpreting [the contested standard]." *Id.* In other words, the agency's standard comported with the "rough idea of fairness" which animates the vagueness doctrine, providing a framework for individuals attempting to understand the statute's provision for removal of employees in instances that would "promote the efficiency of the service." *Id.* at 159–60 (citation omitted).

In this case, the "best interests of the program" standard in CNETINST 1533.9K, Article 404(e)(5) is given context by reference to the factors that the Navy considers when determining whether an individual's conduct warrants decertification. The regulation provides that the Navy will look to an instructor's "conduct, performance, and the evaluations of an SNSI/NSI by the school and/or designated inspectors" in deciding whether decertification is appropriate. These evaluations include a variety of metrics, such as: "[a]dvance classroom preparation; [i]nstructor/cadet rapport; [and p]ersonal conduct." NJROTC Instructor Observation Report, JA 52. This guidance, paired with the heavy burden Appellant faces in demonstrating that the regulation is impermissibly vague in "all of its applications," *Village of Hoffman Estates*, 455 U.S. at 495, renders his facial challenge to CNETINST 1533.9K, Article 404(e)(5) unavailing.

Appellant also cannot credibly assert that the Navy's regulation is impermissibly vague as applied to his case. Br. for Appellant at 16. The behavior that resulted in his decertification – being verbally abusive toward cadets, sleeping in class, and failing to adhere to the NJROTC's curriculum – was of a nature that he surely should have known that it was "not in the best interests of the program."

*See United States v. Thomas*, 864 F.2d 188, 198 (D.C. Cir. 1988) (rejecting as-applied vagueness challenge where appellants had notice because the regulation in question plainly encompassed their behavior); *see also San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136–37 (3d Cir. 1992) (noting that regulation providing that a teacher could be dismissed for failure to maintain "standards of sound scholarship and competent teaching" was not vague as applied to a professor who had been accused of verbal abuse and intimidation of students as "[a] reasonable, ordinary person using his common sense and general knowledge of employer-employee relationships would have fair notice" that he could be dismissed under this standard, *id.* 1137); *Fowler v. Bd. of Educ. of Lincoln Cty., Ky.*, 819 F.2d 657, 664–66 (6th Cir. 1987) (statute proscribing "conduct unbecoming a teacher" was not unconstitutionally vague as applied to a teacher who permitted a "controversial, highly suggestive and somewhat sexually explicit movie to [be shown to] a group of high school students," *id.* at 665).

In sum, on the record before us, we can find no merit in Appellant's void-for-vagueness challenge to CNETINST 1533.9K, Article 404(e)(5). We therefore conclude that the regulation is not unconstitutionally vague.

## C. *The Navy Did Not Violate Appellant's Procedural Due Process Rights*

Appellant contends that the Navy's failure to identify the students who submitted letters that were critical of his performance as a NJROTC instructor or to provide him with the opportunity to interview individuals whose evaluations and opinions were considered during the course of the Navy's decertification proceedings violated his procedural due process rights. Br. for Appellant at 14.

In assessing this claim, we first note that, before the District Court, Appellant did not argue that the Navy's decision to redact students' names from letters submitted in the course of his decertification was improper. *See Crooks v. Mabus*, 104 F. Supp. 3d 86, 102 (D.D.C. 2015). Therefore, this claim has been forfeited. *See District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1078–79 (D.C. Cir. 1984).

Before addressing Appellant's remaining due process claim, we will first determine whether the Navy's decertification decision deprived him of a property or liberty interest. On the record before us, it is clear that Appellant has not demonstrated a property interest sufficient to trigger the protections of the Fifth Amendment's Due Process Clause. We are also doubtful that he has shown a constitutionally protected liberty interest, but we need not reach this issue. We reject Appellant's claim that the Navy's decertification proceedings violated his procedural due process rights because, as the District Court concluded, even "[a]ssuming, *arguendo*" that Appellant had protected liberty or property interests, "he was afforded all the process he was due." *Crooks*, 104 F. Supp. 3d at 102.

### 1. Appellant's Alleged Property Interest

The Supreme Court has noted that property interests "may take many forms." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). However,

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He

> must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577.

Generally, a "claim of entitlement" is not viable when a government agency wields significant or unfettered discretion in determining whether to award or rescind a particular benefit or when an individual lacks an objective basis for believing that he is entitled to retain a benefit. *See*, *e.g.*, *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 35–36 (D.C. Cir. 1997); *Hall v. Ford*, 856 F.2d 255, 265–67 (D.C. Cir. 1988). Indeed, we have held that an individual has no "cognizable property interest" in the renewal of a license or certification where the applicable agency "regulations explicitly permit the agency to not renew an examiner for any reason deemed appropriate by the Administrator." *Fried*, 78 F.3d at 692; *see also Lopez v. FAA*, 318 F.3d 242, 249 (D.C. Cir. 2003) (finding that failure to renew a particular designation did not implicate a protected property interest where agency regulations stated that such designation was "a privilege granted by the Administrator" and that it was "not the right of every qualified applicant to be granted" such a designation).

The regulation at issue in this case, CNETINST 1533.9K, is similar to the regulations at issue in *Fried* and *Lopez*. As noted above, 1533.9K, Article 404(e)(5), permits the Navy to revoke a NJROTC instructor's certification if, "upon consideration of [his or her] conduct, performance, and evaluations . . . continued certification . . . is not in the best interests of the program." Given this language, it is plain that the Navy has retained expansive authority and discretion to determine whether an individual should be allowed to remain in the NJROTC program as an instructor. The language

certainly does not suffice to establish that an instructor's position creates a protected property interest.

Appellant attempts to bypass the difficulty posed by the regulation by claiming that the property interest implicated in this case is his employment at Pearl High School, not his certification as a NJROTC instructor. *See* Reply Br. for Appellant at 10–11. He points to now-defunct language from a Louisiana statute which provided that individuals would "automatically become . . . regular and permanent teacher[s] in the employ of the school board" after serving three years as a probationary teacher. *Id.* He thus argues that the state statute provides him with a protected property interest because he was an employee of Pearl River and taught there for more than three years. *Id.* It is noteworthy that, in 2012, the Louisiana legislature amended this statute to remove the language upon which Appellant relies. H.B. 974, 2012 Leg., Reg. Sess. (La. 2012). Even if this language were still good law, however, Appellant could not rely on a Louisiana statute to diminish the Navy's considerable discretion in determining whether to revoke his NJROTC certification. The state law does not control Navy determinations regarding who will serve as NJROTC instructors. And without certification, Appellant cannot serve as a NJROTC instructor at Pearl River High School or at any other school.

In sum, on the record in this case, we hold that Appellant has not demonstrated a property interest that was infringed by the Navy's revocation of his certification.

### 2. Appellant's Alleged Liberty Interest

It is unclear whether Appellant has presented sufficient evidence to demonstrate that the Navy's decision infringed a constitutionally protected liberty interest. Appellant argues

that, "as a proud Marine, [he] had a liberty interest in his service reputation." Reply Br. for Appellant at 12. He amplifies this point a bit by arguing that "[t]his court has recognized that the stigma to reputation in employment gives rise to a liberty interest." *Id*. (citing *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104–05 (D.C. Cir. 1985)). According to Appellant, the nature of the charges against him, which included dishonesty, due to his alleged falsification of enrollment figures, "castigat[ion] at a [public] school board hearing," and the publication of the charges against him in the local newspaper, were sufficiently stigmatizing so as to foreclose future employment opportunities. *Id.* at 12–13. This, he claims, was enough "to trigger a liberty interest in [his] reputation." *Id*. at 13.

Appellant seems to suggest, *inter alia,* that his liberty interest was infringed because, during the Navy's decertification proceedings, he was accused of dishonesty in falsifying enrollment figures. Indeed, two Reconsideration Board members specifically noted the allegations of dishonesty leveled against Appellant in affirming his decertification. *See* JA 185, 217. He thus apparently contends that this supports his due process claim. *See O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (noting that "defamation alone is not actionable under the due process clause, but that defamation 'in the course of the termination of employment' is" (quoting *Paul v. Davis*, 424 U.S. 693, 710 (1976))); *see also Doe v. U.S. Dep't of Justice*, 753 F.2d at 1104–05. He is mistaken. In order to proceed on this claim, Appellant must demonstrate that the Navy publicized the charges against him. As we noted in *Doe*, in a "stigma-plus" case – *i.e.*, a case involving a claim of defamation – "the government must be the source of the defamatory allegations." 753 F.2d at 1108 (citing *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983)). However, there is nothing

in the record of this case to indicate that the Navy publicized the revocation of Appellant's certification or the reasons for its decision. Whatever adverse publicity resulted from the decertification appears to have emanated from either the actions of the school board or reports in a local newspaper that were not attributed to the Navy. Thus, it cannot be said that the Navy infringed Appellant's liberty interest by publicizing the details of his case. *See Fried*, 78 F.3d at 692 (noting that the government did not make public the claimant's non-renewal, nor did it publicize any reasons for that non-renewal); *see also O'Donnell*, 148 F.3d at 1140; *Orange v. District of Columbia*, 59 F.3d 1267, 1274–75 (D.C. Cir. 1995).

Apart from his defamation claim, Appellant contends that he suffered a stigma to his reputation that gave rise to a liberty interest. Broadly speaking, we have recognized two theories pursuant to which an individual who alleges "government interference with his future employment prospects may demonstrate the tangible change in status required to prove constitutional injury." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995). *First*, "if [the government's] action formally or automatically excludes [the plaintiff] from work on some category of future [government] contracts or from other government employment opportunities, that action . . . implicates a liberty interest." *Id.* (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994)) (alterations in original). *Second*, if the government's action "precludes [the plaintiff] – whether formally or informally – from such a broad range of opportunities that it interferes with [his] constitutionally protected right to follow a chosen trade or profession," the action implicates a liberty interest. *Id.* (citing *Kartseva*, 37 F.3d at 1529) (internal quotation marks omitted).

To the extent that Appellant's liberty interest claim rests on the second theory – *i.e.*, the Navy's decision interferes with his constitutionally protected right to follow a chosen profession – he is on weak ground. His argument claims too much. Discharge from a particular job is not the same as exclusion from one's chosen profession. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 539 (D.C. Cir. 2015) (noting that "the loss of 'one position in [the] profession' is insufficient to implicate a Fifth Amendment liberty interest in following one's chosen trade or profession. Rather an individual must suffer a binding disqualification from work or broad preclusion from his or her chosen field." (citing *Kartseva*, 37 F.3d at 1528–29) (citations omitted)). In *Fried*, for example, this court held that an individual's liberty interest was not implicated where an agency refused to renew his designated pilot examiner license because he could still "sell flight instruction services to willing private buyers." 78 F.3d at 692. Here too, Appellant, while unable to continue in his role as a NJROTC instructor, was able to find employment as a teacher at a new institution. Reply Br. for Appellant at 13.

To the extent that Appellant's claim rests on the first theory – *i.e.*, the Navy's decision effectively excluded him from work on some category of future government contracts or from other government employment opportunities – it is harder to assess. The case law is somewhat difficult to square with respect to claims of "stigma to reputation," which is the focus of Appellant's claim in this case.

In *Taylor*, the court explained that:

Constitutional injury supposes something more than simple defamation or stigma. *Paul v. Davis*, 424 U.S. 693 (1976). Even a plaintiff who receives an

> admittedly defamatory recommendation from a prior government employer that "would undoubtedly . . . impair his future employment prospects" cannot establish a constitutional violation "so long as such damage flows from injury caused by the defendant to a plaintiff's reputation" alone. *Siegert v. Gilley*, 500 U.S. 226, 234 (1991). To prove constitutional injury, the plaintiff must show not only that the government has imposed some stigma upon him, but also that it has worked some change in his status under law. *See Paul v. Davis*, 424 U.S. at 711–12.

*Taylor*, 56 F.3d at 1506. In other words, Appellant may not "sue purely on the basis of the stigma associated with being fired." *O'Donnell*, 148 F.3d at 1139. "[S]tigma alone is not actionable, without a showing that a 'right or status previously recognized by state law' has been 'distinctly altered or extinguished.'" *Id*. (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). As this case demonstrates, however, determining whether a claimant has suffered a "change in status" sufficient to support a claim of constitutional injury is not always easy.

One way to read the record here is to say that the Navy's decertification decision had a very limited effect – it merely foreclosed Appellant from serving as a NJROTC instructor, nothing more. Appellant was not barred from other government employment opportunities. Indeed, he has not even claimed that he has been unsuccessful in seeking other employment positions with the federal government. At worst, Appellant suffered damage to his reputation, which, without more, is not enough to support his liberty interest claim. In other words, it is hard to see how the Navy's action not only "imposed some stigma upon him, but also . . . worked some change in his status under law." *Taylor*, 56 F.3d at 1506.

On the other hand, another way to view Appellant's situation is to say that he has been excluded from all future employment or contracting opportunities with the NJROTC program. In *Old Dominion Dairy Products v. Secretary of Defense*, 631 F.2d 953, 963–64 (D.C. Cir. 1980), we held that a contractor had a viable liberty interest due process claim after a government agency found the contractor guilty of misconduct and prevented the contractor from securing further contracts with the same agency. In this case, Appellant seems to view his decertification from the NJROTC program as comparable.

We acknowledge that Appellant's claim that the Navy's decision infringed a constitutionally protected liberty interest is not implausible. Nevertheless, we remain dubitante on this point. We need not struggle further with this issue, however, because we agree with the District Court that, even "[a]ssuming, *arguendo*" that Appellant had protected liberty or property interests, "he was afforded all the process he was due." *Crooks*, 104 F. Supp. 3d at 102.

### 3. Appellant was Afforded All of the Process That He Was Due

In support of his claim that he was denied constitutionally adequate process, Appellant advances several arguments. Taking into account the commands of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and its progeny, we find no merit in any of Appellant's contentions.

First, Appellant claims that the Navy redacted the names from letters written by some of his students. As noted above, this argument was never raised in the District Court so it is plainly forfeited.

Appellant also claims, without any record citation, that the Navy "stymie[d]" his investigation by preventing him from interviewing students, school staff, and naval personnel. Br. for Appellant at 14–15. The record, however, supports the Navy's position that it did not stand in his way. A report from Appellant's own private investigator shows that he tried to contact some of his students but was unsuccessful for a variety of reasons, none having to do with the Navy. JA 157. Appellant also concedes in his Reply Brief that the Navy played no role in his inability to interview school personnel. Reply Br. for Appellant at 15.

Finally, in his reply brief, Appellant does submit an email chain that might corroborate his claim that the Navy prevented him from interviewing Commander Ladner, who conducted one of his unfavorable performance reviews. Reply Br., Exh. A. Not only does this come too late, Appellant never moved to supplement the record with those emails either in this court or before the District Court. Even if he had, Appellant eventually deposed Ladner in 2011, yet he neglects to offer any information that he gleaned from that deposition that he believes would have altered the Boards' decisions. *See Horning v. SEC*, 570 F.3d 337, 347 (D.C. Cir. 2009) ("In the absence of any suggestion of prejudice, we cannot conclude that [Appellant] was deprived . . . of procedural due process . . . .").

In addressing Appellant's due process claim, the District Court stated:

> [Appellant] submitted a detailed rebuttal to the allegations against him prior to his decertification, and, with the assistance of counsel, to each of the Boards reviewing the decision. As the defendants

point out, the "[Appellant] received all the administrative review procedures that are available, except for an in-person hearing, and [Appellant] does not argue that he was entitled to such a hearing." Defs.' Opp'n at 15. The D.C. Circuit has held that "[d]ue process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 599 (D.C. Cir. 1993). Thus, even assuming, without deciding, that the [Appellant] had a liberty or property interest in his NJROTC certification, the [Appellant's] receipt of the evidence against him and his three separate opportunities, of which he availed himself, to submit rebuttal evidence, constitute sufficient due process such that the plaintiff's right to due process under the Fifth Amendment was not abridged.

*Crooks*, 104 F. Supp. 3d at 103 (citations and footnotes omitted). We agree. "Under the utilitarian balance prescribed by the Supreme Court in *Mathews v. Eldridge*, [Appellant] has received at least the quantum of process [he] was due before being" decertified by the Navy from the NJROTC program. *Reeve Aleutian Airways*, 982 F.2d at 602.

## D. *The Navy's Decertification Decision Was Neither "Arbitrary and Capricious" Nor Unsupported by "Substantial Evidence"*

Appellant claims that the Navy's decertification decision was both arbitrary and capricious and lacking in substantial evidence. However, there is no material difference between the APA's "arbitrary and capricious" standard and its

"substantial evidence" standard as applied to court review of agency factfinding. *See Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007) ("[An] informal adjudication[] . . . must be supported by substantial evidence – otherwise it would be arbitrary and capricious.") (quotation marks omitted); *see also Ass'n of Data Processing Serv. Orgs. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984); EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW, *supra*, at 203, 220–21. We will therefore evaluate Appellant's arbitrary-and-capricious and substantial evidence claims in tandem in reviewing the Navy's decertification decision.

In determining whether the Navy's actions were arbitrary and capricious, this court does not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, we examine an agency's decision to ensure that it "was reasonable and reasonably explained." *Jackson v. Mabus*, 808 F.3d 933, 936 (D.C. Cir. 2015). Similarly, we may find that an agency decision is "supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Morall v. DEA*, 412 F.3d 165, 176 (D.C. Cir. 2005) (quoting *Robinson v. Nat'l Transp. Safety Bd.*, 28 F.3d 210, 215 (D.C. Cir. 1994)).

Appellant's objections to the Navy's decision to revoke his certification largely center around two interrelated arguments. *First*, he claims that the Navy failed to take seriously his contention that information submitted by the Principal of Pearl River High School that accused Appellant of failing to adequately perform his duties was due to "bad blood" between the two. Br. for Appellant at 23. *Second*, Appellant claims that the Navy abused its discretion in failing to consider evidence submitted by him at various points

throughout the decertification process, including: a polygraph test taken by Appellant; the results of an investigation conducted by his counsel's private investigator; his explanation that he fell asleep in class due to a recently prescribed medication; a positive evaluation of his work in his new teaching position; and a finding by the Louisiana Department of Labor that he had not been discharged from his position for misconduct connected with his employment. Br. for Appellant at 23–26. These arguments do not hold water.

The Navy was not required to credit Appellant's claim that the Principal's assessment of his performance was attributable to a disagreement between the two men, nor did it need to "explain away every point raised" or piece of evidence contained in Appellant's submissions. *Crooks*, 104 F. Supp. 3d at 100 (citing *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010)). At every proceeding in which the Navy considered whether to revoke Appellant's certification, it informed Appellant that the officials responsible for reviewing his case had considered the entire record before them, including the evidence submitted by Appellant that he now claims was overlooked or improperly weighed. *See* JA 122, 183, 219. The fact that the Navy did not draw the inferences that Appellant might wish when examining this evidence does not render its decision arbitrary and capricious or unsupported by substantial evidence.

Under well-established law, the Navy was only required to review relevant information and articulate a satisfactory explanation establishing "a rational connection between the facts found and the choice made." *Am. Trucking Ass'ns v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 249 (D.C. Cir. 2013) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43)). As the District Court's opinion carefully lays out, "the

evidence [that Appellant] presented to the Boards was available for their consideration, but the Boards articulated, based on other solid evidence" – including the facts that the Appellant had deviated from the NJROTC curriculum, interacted inappropriately with cadets, and was found to be either sleeping during, or absent from, class – "a rational explanation for a decision against the [Appellant]." *Crooks*, 104 F. Supp. 3d at 102. We agree. Therefore, we have no grounds to second-guess the judgment reached by the Navy.

### III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the District Court.